TRUST UNDER DEED OF ALBERT R. GALLATIN WELSH DATED MARCH 19, 1935, GIRARD TRUST COMPANY, AS TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24997.   Promulgated June 20, 1951.

*George Craven, Esq.*, for the petitioner.
*John A. Newton, Esq.*, for the respondent.

#### OPINION.

TIETJENS, *Judge:* Respondent, under section 143 (b) of the Internal Revenue Code, determined a deficiency of $5,400 in the income tax liability of petitioner for withholding of tax at source on payments made to a nonresident alien individual in the year 1948. Petitioner appeals from this determination.

All the facts have been stipulated and are so found.

Albert R. Gallatin Welsh and Gabrielle B. Welsh were married on October 25, 1933, in Paris, France. No children were born of this marriage.

On May 16, 1938, they entered into a separation agreement and in the same year were divorced by an adjudication of the District Court

of Zurich, Switzerland. The separation agreement, while providing that it should in no wise be affected by divorce, nevertheless provided that Albert should pay Gabrielle $400 per month until her death or remarriage. The decree of divorce did not refer to the agreement, but did require Albert to pay Gabrielle in advance for her support the sum of $400 per month until her remarriage. Gabrielle never remarried.

Albert subsequently remarried. He died December 1, 1944, a resident of Delaware County, Pennsylvania. At all times he was a citizen of the United States. His second wife, Helene, and two sons of his second marriage survived.

Albert left a last will and testament dated November 18, 1940, which was duly admitted to probate in Delaware County, Pennsylvania, and of which Girard Trust Company and Charles N. Welsh, Jr., are executors.

By deed of trust dated March 19, 1935, Albert created a trust of which Girard Trust Company (the petitioner here) and Charles N. Welsh, Jr., (hereinafter called trustees) were and still are cotrustees. Gabrielle was not a beneficiary of the trust.

In his will Albert exercised a power of appointment which he had reserved over the trust estate and by virtue thereof he directed the trustees to pay one-half of the income of the trust estate to Helene and the remainder of the income to his children.

Albert's net estate, exclusive of property held in the trust, amounted to $1,471.29 after paying claims other than Gabrielle's. Gabrielle instituted proceedings in the Orphans' Court of Philadelphia County, Pennsylvania, which had jurisdiction of the trust, to subject the corpus of the trust to her claim as a creditor of the estate for payment of the $400 per month pursuant to the separation agreement and divorce decree. By supplemental adjudication dated October 1, 1947, the Court awarded Gabrielle from the principal of the trust the total amount of all unpaid monthly sums accruing from Albert's death and payments of $400 per month to be paid thereafter pursuant to the separation agreement and divorce decree.

Since Albert's death the trustees have paid the trust income regularly each year, including 1948, to the beneficiaries named in the appointment under his will. Such income for 1948 was reported for Federal income tax purposes by the beneficiaries. Albert's estate had no income in 1948.

Pursuant to the adjudication of the Orphans' Court of Philadelphia County, referred to heretofore, petitioner in the year 1948 set aside the sum of $18,000 from the principal of the trust to satisfy payments at the rate of $400 a month due to Gabrielle subsequent to Albert's death. Of that amount petitioner paid Gabrielle $12,600 in 1948,

after March 6, 1948, and it retained the balance of $5,400 to cover liability, if any, for withholding tax at the rate of 30 per cent of such sum of $18,000.

Gabrielle was at all times referred to and at the time of the hearing, a nonresident alien of the United States and a citizen of France. She was not at any time during 1948 engaged in trade or business within the United States.

This case involves the primary question, whether section 143 (b) requires petitioner to withhold tax at the rate of 30 per cent on the payments it made to Gabrielle.

To answer this question we must first consider whether the payments would be income to Gabrielle. Under sections 211 and 22 (k) of the Internal Revenue Code, we think they would be. Gabrielle is a nonresident alien individual not engaged in trade or business within the United States. As such, she is subject to a tax of 30 per cent (in lieu of the normal and surtax on individuals imposed by sections 11 and 12) of any amounts received by her from sources within the United States as "fixed or determinable annual or periodical gains, profits, and income." We turn to section 22 (k) [1] and find that it plainly requires a divorced wife to include in her gross income periodic payments which she receives subsequent to the decree in discharge of a legal obligation imposed on the husband by such decree because of the marital or family relationship. It is not questioned here that the payments made to Gabrielle were of the character described in section 22 (k). Had Gabrielle received the payments prior to Albert's death we have no doubt they would have been includible in her gross income, and the fact that she was obliged to enforce her rights through court action does not change the character of the arrearages or subsequent monthly payments. *Estate of Sarah L. Narischkine*, 14 T. C. 1128, affd. (C. A. 2), 189 F. 2d 257. Neither do we think the character of the payments was affected by the husband's death, *Helen Scott Fairbanks*, 15 T. C. 62; *Margaret C. Izrastzoff*, 15 T. C. 573; nor by the fact that Gabrielle was a nonresident alien.

Petitioner argues, however, that because the decree of the Orphans' Court made the payments a charge on the corpus of the trust rather

---

[1] SEC. 22. GROSS INCOME.

* * * * * * *

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * * (In cases where such periodic payments are attributable to property of an estate or property held in trust, see section 171 (b).)

than trust income, the payments are not to be treated as income. We do not agree. Under section 22 (k), whether the payments are made from income or capital is not significant. This is shown by the legislative history of that section, where it is unequivocally explained that the full amount of periodic payments received under the circumstances described must be included in the gross income of the recipient and that "it matters not that such payments are attributable to property, in trust, to life insurance, endowment, or annuity contracts, or to any other interest in property, or are paid directly or indirectly by the obligor husband from his income or capital." (S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), p. 84).

Nor do we agree with petitioner's argument that section 171 must be looked to rather than section 22 (k). The Report of the Senate Finance Committee referred to above, at page 85, shows that section 171 states the rules applicable to trust or estate *income* after a decree of divorce in the case of a trust created prior to divorce and to which the *provisions of section 22 (k) are not applicable.* As above indicated, we think section 22 (k) *is* applicable here and since the payments to the wife are to be made from trust corpus and not from trust *income*, section 171 is not brought into play so far as taxability to the wife is concerned. Nor do we find anything in the sections read together which would indicate that if the payments come from corpus they are not to be included in the wife's gross income.

This brings us then to petitioner's contention that even if sections 22 (k) and 211 would require the payments to be included in Gabrielle's gross income, yet such amounts are not of the class of income properly subject to withholding under section 143 (b). That section requires the withholding of tax at the rate of 30 per cent on amounts paid to a nonresident alien where such amounts fall within the following categories:

\* \* \* interest (except interest on deposits with persons carrying on the banking business paid to persons not engaged in business in the United States), dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income (but only to the extent that any of the above items constitutes gross income from sources within the United States) \* \* \*

As we understand it, petitioner's point is that section 143 (b) is limited by section 119 (a) which provides that certain described items of gross income shall be treated as income "from sources within the United States." Not finding payments of the type involved in this case among the items described in section 119 (a), petitioner concludes the payments made to Gabrielle are not subject to withholding. We find no such limiting purpose in section 119 (a) and agree with respondent that its purpose was not to set out all-inclusive

types of income from sources within the United States. *Helvering* v. *Suffolk Co.*, 104 F. 2d 505; *Hubert De Stuers*, 26 B. T. A. 201.

Do the payments to Gabrielle fall within the broad classification subject to withholding under section 143 (b) of "fixed or determinable annual or periodical gains, profits, and income (but only to the extent that any of the above items constitutes gross income from sources within the United States)"? This language is the same as found in section 211 which imposes the 30 per cent tax on the nonresident alien. No serious contention is made that the payments do not have their source within the United States unless section 119 (a) has the limiting purpose contended for by petitioner, which, in our opinion, it does not. Are the payments then "fixed or determinable annual or periodical * * * income"? Petitioner contends they are not because, although payments of this character are defined as includible in gross income under section 23 (k) yet 23 (k) was added to the Code subsequent to section 143 (b) and "income" as used in section 143 (b) means only such items as were "income" at the time that section was enacted. We think this interpretation of the term "income" as used in section 143 (b) is entirely too narrow. The term as there used is a broad one. It is not limited by definition or reference. We cannot read into section 143 (b) any intent on the part of Congress to limit the meaning of "income" to any concept of what that term included on any particular day or in any particular year. It is sufficient to say that in the taxable year 1948 which embraces this controversy, payments of the character here involved were includible in Gabrielle's gross income under the Federal income tax laws, and we think it also inescapable that they were income subject to withholding under section 143 (b).

*Decision will be entered for the respondent.*